UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NICHOLAS AIOLA,

                                            Plaintiff,                    **MEMORANDUM OF
                                                                          DECISION AND ORDER**
                                                                          15-cv-064(ADS)(GRB)
            -against-

MALVERNE   UNION   FREE   SCHOOL
DISTRICT,  MALVERNE   UNION   FREE
SCHOOL     DISTRICT     BOARD     OF
EDUCATION,  SPIRO  COLAITIS,  JAMES
BOSWORTH, and JAMES HUNDERFUND,

                                            Defendants.
-----------------------------------------------------------------x
**APPEARANCES:**

**The Law Office of Steven A. Morelli, P.C.**
*Attorneys for the Plaintiff*
1461 Franklin Avenue
Garden City, NY 11530

**Sokoloff Stern LLP**
*Attorneys for the Defendants*
179 Westbury Avenue
Carle Place, NY 11514
            By:    Brian S. Sokoloff, Esq.
                   Melissa L. Holtzer, Esq., Of Counsel

**SPATT, District Judge:**

            On December 11, 2014, the Plaintiff Nicholas Aiola (the "Plaintiff" or "Aiola")

filed an Amended Complaint in New York State Supreme Court against his former

employer, the Defendant Malverne Union Free School District (the "District"), as

well as the District's Board of Education (the "Board"), its Assistant Superintendent

for District Operations, Spiro Colaitis ("Colaitis"), its Head of Maintenance, James

1

Bosworth ("Bosworth"), and its Superintendent, James Hunderfund ("Hunderfund"). The District, the Board, Colaitis, Bosworth, and Hunderfund will be referred to collectively as the "Defendants."

The Amended Complaint alleges that: (i) the District and the Board discriminated against Aiola on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* (the "Rehabilitation Act"), and the New York State Human Rights Law, N.Y. Exec. L. § 296 *et seq.* ("NYSHRL"), see Am. Compl. ¶¶ 69-70; (ii) the District and the Board discriminated against him on the basis of his national origin in violation of the NYSHRL, see id. ¶¶ 71-72; (iii) the District and the Board retaliated against him by pursuing disciplinary charges in response to his "good faith opposition to discriminatory practices," in violation of the ADA, the Rehabilitation Act, and the NYSHRL, id. ¶¶ 73-74; (iv) Colaitis, Bosworth, and Hunderfund aided and abetted discriminatory and retaliatory conduct by the District and the Board, see id. ¶¶ 75-76; (v) Colaitis defamed him in violation of New York common law, see id. ¶¶ 77-79; and (vi) the District and the Board failed to pay him overtime and compensation wages in violation of the New York Labor Law ("NYLL"), see id. ¶¶ 80-81.

On January 7, 2015, the Defendants removed the action to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

On February 18, 2015, the Defendants moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the Plaintiff's national origin

discrimination and wage-and-hour claims.  For the reasons contained herein, the motion is granted in part and denied in part.

## I.    Factual Background

Except as otherwise noted, the following facts are drawn from the Amended Complaint and construed in favor of the Plaintiff.

The Plaintiff is a 54-year old resident of Nassau County, New York.  In 2007, the Plaintiff became employed by the District as the Head Custodian for Malverne High School (the "High School").  While he does not specifically describe his job responsibilities as Head Custodian, the Plaintiff alleges that throughout the course of his employment, he "proved himself to be a hard-working, reliable, and dedicated employee" whose "knowledge and skill-set in all facets of maintenance ma[d]e him an asset to the District by ensuring the [High] School r[an] smoothly in its daily operations." Am. Compl. ¶ 13.

The Plaintiff was also named to the position of District Checker, which involved responsibility for conducting walk-throughs of District buildings at night and responding to alarms on nights and weekends, and for which he earned an annual stipend of $13,500 in addition to his salary as Head Custodian.

The Plaintiff also alleges that he serves on the High School's Safety Committee, though he does not provide any details regarding that committee or what his service entails.  He also alleges that in 2009 he was elected President of the Local 865 Custodial Unit Union (the "Union").

From 2007 to 2011, the Plaintiff claims he was never subject to any formal discipline and had not received any negative performance evaluations.

## A.     The Plaintiff's Shoulder Injury

On January 28, 2011, due to a snowstorm, the south side of the High School was coated with a five-inch-thick layer of ice.  The Plaintiff arrived to work at the High School early to remove the ice and create a walkway from the parking lot to the school building.  In the course of his work, the Plaintiff experienced a "sharp pain in his right shoulder," for which he sought medical attention the same day. Id. ¶ 18

The Plaintiff alleges that his shoulder pain was diagnosed as adhesive capsulitis, a condition also known as "frozen shoulder," which is permanent and limits his performance of manual tasks.  Specifically, the Plaintiff alleges that his condition drastically limits his range of motion and strength in his right shoulder, and causes him constant pain, which results in significant difficulty engaging in several major life activities including lifting, reaching, carrying and other manual tasks.  In addition, the Plaintiff claims that he has trouble sleeping due to the pain.

As a result of his alleged injury, the Plaintiff alleges to have undergone two surgeries and one manipulation on his right shoulder.  He also claims that he takes daily pain medication and attends regular physical therapy sessions to manage his pain.

**B.    The Plaintiff's Medical Leave**

As a result of being diagnosed with adhesive capsulitis, the Plaintiff took medical leave.  He does not provide details regarding the dates or length of his leave, but nevertheless alleges that Colaitis, the Plaintiff's direct supervisor, removed him from his position as District Checker while he was out of work.

The Plaintiff alleges that when he questioned Colaitis about his removal from the position of District Checker, Colaitis stated that he believed the Plaintiff could no longer perform the required duties.  However, according to the Plaintiff, the District Checker position is not one which requires any physical labor.

Furthermore, according to the Plaintiff, the District failed to raise any concerns, offer any job accommodations, or make any effort to engage in an interactive process prior to removing the Plaintiff from his position.

Upon the Plaintiff's removal, non-party Robert Hodges, who the Plaintiff alleges is not disabled, was given the position of District Checker.

**C.    The Plaintiff's Return to Work**

In June 2011, the Plaintiff returned to work from medical leave.  He alleges that he was forced to return before his recommended recovery time was complete because he risked losing his benefits package.

After returning to work, the Plaintiff allegedly found it increasingly difficult to complete tasks without experiencing excruciating pain.  He claims to have requested a workplace accommodation from Colaitis on several occasions in the form of a third man during the day shift, but each such request was unjustifiably

denied.    The  Plaintiff  alleges  that  Colaitis  was  aware  of  his  disability  and
unlawfully  failed  to  engage  in  good-faith  discussions  regarding  the  Plaintiff's
individualized needs and/or reasonable accommodations.

In  fact,  the  Plaintiff  claims  that  Colaitis  has,  on  several  occasions,  openly
degraded his injury by *inter alia* stating that the Plaintiff "made up his injury" and
that his injury "never happened."  Id. ¶ 28.

**D.    The Defendants' Allegedly Discriminatory Conduct**

In  addition  to  the  conduct  outlined  above,  the  Plaintiff  claims  that  Colaitis
embarked upon a course of conduct intended to embarrass and belittle him in front
of co-workers, and he provides several alleged examples of such conduct.

On  one  such  occasion,  Colaitis  stated  that  the  Plaintiff's  work  "look[s]  like
[Colaitis's] ass[.]"  Id. ¶ 31.

On  several  other  occasions,  Colaitis  allegedly  called  the  Plaintiff  on  a
speakerphone  and  stated  that  he  was  "with  the  boys,"  referring  to  Bosworth  and
Hodges.  See id.  During one such call, Colaitis stated that the Plaintiff "reminded
him  of  the  'Italian  cruise  ship  Captain,'"  who  memorably  caused  the  Costa
Concordia cruise ship to capsize.  Id. ¶ 32.  The Plaintiff interpreted this remark as
a  clear  indication  that  Colaitis  was  harassing  him  on  the  basis  of  his  Italian-
American national origin.

The Plaintiff also alleges various other indignities that he has suffered at the
hands of Colaitis, including:  being insulted in front of his co-workers and family
members;  being  made  to  feel  like  a  worthless  employee;  being  addressed  with  a

demeaning tone as if he were inferior to Colaitis; having Colaitis invade his personal space and speak with a physically threatening posture; being publicly mocked or reprimanded and made to feel inferior and an outcast in his place of employment.

The Plaintiff alleges that Colaitis targets him and does not act similarly toward other employees at the High School.

## E.   Specific Allegations of Disability Discrimination

The Plaintiff alleges that Colaitis's mistreatment of him worsened after his injury.

For example, in September 2011, the High School's then-Principal notified the Plaintiff that a maintenance job, which was scheduled to be performed at the school after hours, had been cancelled and, consequently, the Plaintiff did not need to be available to open the building.  Nevertheless, at approximately 6:00 P.M. that night, Colaitis allegedly contacted the Plaintiff via a two-way radio while the Plaintiff was at home and verbally abused him, cursing at him and insulting him for not opening the building.  The Plaintiff claims to have been humiliated by the experience.

Thereafter, on November 15, 2013, the Plaintiff was instructed to refinish the High School's gymnasium floor in just two days, a task that he contends is nearly impossible to complete, even for non-disabled employees.  The Plaintiff does not allege who so instructed him, but claims that the request was in furtherance of building a case for his eventual termination.  In performing the requested work, the

Plaintiff allegedly tripped and fell hard on the floor, injuring his left elbow and breaking one of his ribs.  Allegedly, he later underwent surgery to treat the injury to his left elbow suffered as a result of this incident.

On March 7, 2014, Colaitis allegedly contacted the Plaintiff on his two-way radio and yelled at him about heating issues at the High School, over which the Plaintiff claims he has no control.   During this interaction, Colaitis allegedly directed the Plaintiff to " 'get it done or I will come over there and shoot someone in the head.' "  Id. ¶ 47.  The Plaintiff believed this remark to be a threat against him and accordingly notified the High School's Principal, Vincent Romano, its Assistant Principal, Kesha Bascombe, and the Labor Resource Specialist of the Union, Robert Brooks.  At Brooks's suggestion, the Plaintiff also filed a police report concerning the incident.

On another occasion in April 2014, Colaitis stated in the presence of Principal Romano and Hodge that he "want[ed] [the Plaintiff] to know, this is not a social services District," which the Plaintiff understood to indicate Colaitis's dismissive attitude toward his alleged disability.  Id. ¶ 58.

The Plaintiff alleges that the course of conduct described above is designed to pressure him out of his position in the District because of his disability.  In fact, the Plaintiff alleges that since injuring his shoulder, he has been blamed by Colaitis for all of the High School building's problems, and pest-control issues.

Romano has allegedly taken no steps to improve the conditions of the Plaintiff's employment, despite numerous complaints.

**F.     The April 3, 2014 Meeting**

On April 3, 2014, the Plaintiff attended a meeting with Principal Romano, Colaitis, and Hodge.  According to the Plaintiff, the purpose of the meeting was to reprimand him for failing to raise the American flag at the High School.  However, the Plaintiff contends that his shoulder and elbow injuries prevented him from being able to raise the flag and, as a result, his co-workers had been completing that task in his place.

On the day of the meeting, the flag had gone unraised because the substitute janitor entrusted with that duty was on vacation.  Nevertheless, Colaitis allegedly began yelling at the Plaintiff and accused him of being "un-American."  Id. ¶¶ 50-51. The Plaintiff alleges that he recommended the reinstatement of a third janitor as a reasonable accommodation for instances when his second janitor was occupied or on vacation, but that his suggestion was ignored.

Also at the April 3, 2014 meeting, Colaitis allegedly made the following remark to the Plaintiff, which forms the basis of his defamation claim: "I had you checked out, and know that you were fired from your position with the Long Beach Police Department."  Id. ¶ 55.  According to the Plaintiff, this statement, which was made in the presence of Principal Romano and Hodge, has no basis in fact and was only made to intentionally defame the Plaintiff's character in his profession. Actually, the Plaintiff had previously served as a volunteer on the Long Beach Auxiliary Police Department and left voluntarily due to family demands.

Allegedly, the Plaintiff became upset during the April 3 meeting and broke down emotionally in front of Principal Romano.  He claims that he has since sought psychological treatment to help him cope with the constant badgering by Colaitis.

**G.      The Plaintiff's Ouster as Union President**

In July 2013, approximately two-and-a-half years after being injured, the Plaintiff "lost" his seat as Union President.  The Amended Complaint does not specify whether the Plaintiff lost a re-election or was removed in some other fashion.  The pleading also fails to clearly indicate whether the Plaintiff believes this occurrence was motivated by animus toward his disability or national origin.

In any event, Robert Hodge, the same person who replaced the Plaintiff as District Checker, was elected the new President of the Union.  As a result of Hodge's election, and his alleged close relationship with Colaitis, the Plaintiff claims that he can no longer address the Union with matters of significance, for fear that they will not be taken seriously.

**H.      The Reduction in the Plaintiff's Overtime Hours**

The Plaintiff alleges that after reporting Colaitis's behavior to Principal Romano, his requests for overtime have been repeatedly denied by Colaitis and the District.   In this regard, the Plaintiff alleges that while other non-disabled employees are afforded requested overtime as needed to complete their jobs, he has not been afforded that opportunity.

Despite alleging a reduction in his paid overtime, the Plaintiff also paradoxically states that the District grants its employees compensation time

("comp time") *in lieu of* overtime, which the Plaintiff may amass for overtime hours and then use for personal days.  The Plaintiff does not specifically allege how much comp time he has accrued, but nevertheless claims that the Defendants' have arbitrarily reduced his accrued hours by fifty-six hours.

## II.    Procedural History

### A.    The Plaintiff's Notice of Claim and Bosworth's Assault

On May 2, 2014, the Plaintiff served a Notice of Claim on the District and the Board, which alleged discrimination and retaliation on the basis of his disability and national origin.

The next day, Defendant Bosworth, the High School's Head of Maintenance, allegedly approached the Plaintiff carrying a cracked fire door and said " 'hello, Nicholas . . . here, breath[e] this in, this is asbestos,' " and blew a white powdery substance from the door into the Plaintiff's face.  Id. ¶ 60.  The Plaintiff claims that the powder immediately irritated his eyes and throat, causing him to begin coughing and temporarily lose vision.  Bosworth allegedly then said " 'goodbye, Nicholas' " and left the area.  Id.

Following this incident, the Plaintiff claims that he was observed by the High School nurse, who recommended that he see a physician.  He claims he was later observed by his physician and two specialists and endured a painfully scratchy sensation in his nose and throat for more than a week.  In addition, the Plaintiff alleges that he suffered undue stress about possible future ailments associated with asbestos.

According to the Plaintiff, Bosworth's conduct was in retaliation for his filing a Notice of Claim against the District and the Board, neither of whom took punitive action against Bosworth for his role in the incident.

## B.   The District's Statement of Charges and Resultant Disciplinary Proceeding

In connection with the Plaintiff's Notice of Claim, the District scheduled a hearing pursuant to New York General Municipal Law § 50-h.  The hearing was scheduled to take place on June 11, 2014.

On June 10, 2014, the District Superintendent, Defendant Hunderfund, on behalf of the District, presented the Plaintiff with a Statement of Charges pursuant to New York Civil Service Law § 75 citing him for disciplinary infractions, including incompetence, insubordination and misconduct.  As a result of these charges, the Plaintiff was suspended for thirty days, without pay.   It is the District's commencement of these disciplinary charges that forms the basis of the Plaintiff's retaliation claim.  In this regard, the Plaintiff alleges that the Statement of Charges was intended solely to harass him in retaliation for serving a Notice of Claim on the District.   In addition, it is Hunderfund's act of serving the Plaintiff with the Statement of Charges that forms the basis of the Plaintiff's claim against him for individually aiding and abetting under the NYSHRL.

A hearing on the charges proffered by the District was held by Hearing Officer ("H.O.") Arthur A. Riegel at the District's administrative offices over the course of four days:  August 5 and September 4, 17 and 22, 2014.

**C.      Commencement of the Instant Action**

On November 14, 2014, while the District's charges were still pending, the Plaintiff filed a Complaint in New York State Supreme Court.

On December 11, 2014, following the Plaintiff's receipt of a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), he filed an Amended Complaint adding federal claims.

**D.      The Hearing Report**

On January 5, 2015, before the Defendants interposed an answer to the Plaintiff's Amended Complaint, H.O. Riegel issued a sixty-page report (the "Hearing Report") containing his factual findings and recommendations after the § 75 hearing.  The Defendants submit the Hearing Report in support of their motion to dismiss.

Without expressing an opinion here as to the weight, if any, to be given the Hearing Report, a brief discussion of its contents is appropriate in light of the Defendants' argument that its conclusions form the basis for dismissing one of the Plaintiff's causes of action.

Initially, the report indicates that each party was represented by counsel and had a full and fair opportunity to conduct direct and cross-examination of witnesses and to present relevant documentary evidence.  However, the Hearing Report was provided to the Court without any supporting papers.  In this regard, the exhibits introduced by the parties, upon which the report's findings and conclusions are

based, are not in the record.   Also not included is any transcribed witness testimony.

Further, an examination of the Hearing Report reveals that the scope of the § 75 hearing is different from the causes of action asserted in the instant action.   As a result, many of its factual findings are inapplicable here.   Also, many of the issues raised in this case were not addressed during the hearing.   Rather, the scope of the hearing was framed by the three specific charges levied against the Plaintiff, namely, incompetence, insubordination, and misconduct, each of which incorporated a series of "specifications" setting forth particular factual assertions undergirding the charge.

The areas of overlapping factual relevance — that is, where H.O. Riegel rendered findings relative to facts that are also raised in the Amended Complaint — are described briefly here.

Regarding the Plaintiff's allegation that he was blamed for temperature regulation issues over which he had no control, the Hearing Report concludes that the Plaintiff was on notice of the need to monitor the temperature in certain rooms and to employ space heaters and open windows, as needed, and that those tasks were within the Plaintiff's job duties.   According to the report, while perhaps true that the heating system was flawed, the Plaintiff was not being held responsible for a poorly working system; he was being charged with not monitoring the temperature in classrooms such that the rooms were comfortably warm when students arrived.   H.O. Riegel concluded that it was apparent the Plaintiff did not

accept that an important part of his job was to provide an appropriate physical environment for students and that the District had met its burden of establishing that the Plaintiff failed to comply with his supervisors' directives in this regard.

Regarding the Plaintiff's conceded failure to raise the American flag outside the High School, H.O. Riegel found three undisputed facts: (i) the flag was not raised on the days at issue; (ii) New York State law and District policy require the raising of the flag outside the school daily; and (iii) as Head Custodian, the job of raising the flag was an obligation of the Plaintiff.

While the Plaintiff was free to delegate the task to a subordinate, which he regularly did, he was ultimately responsible to make sure that the flag was raised. Thus, H.O. Reigel found that the District met its burden of proving that Plaintiff's performance was deficient on the days when one of his subordinates was unavailable to raise the flag.

With respect to the April 3, 2014 meeting described above, H.O. Riegel credited testimony from Colaitis and Hodge that the Plaintiff refused to sit at the conference table with the other meeting participants; that the Plaintiff became combative and repeatedly stated "this hostility stops today"; and that the Plaintiff left the meeting without permission to do so.

In addition, H.O. Riegel found that the Plaintiff had damaged his own credibility by falsely claiming that Hodge and Colaitis had such a close personal relationship that Colaitis was the godfather to Hodge's children.

In sum, the Hearing Report concluded that "[r]efusing to sit at a conference table until ordered to do so, repeatedly making unprovoked hostile comments . . . and walking out of the unconcluded meeting without permission to do so can in no way be seen as anything but thwarting and challenging the authority of a legally constituted superior." Hrg. Rpt. at 41.

Finally, the report explains that, upon learning of the Plaintiff's version of the asbestos incident, Colaitis had a door identical to the one in question tested by a recognized laboratory. The results indicated that the tested door contained no asbestos. Thus, H.O. Reigel concluded that Bosworth could not have blown asbestos in the Plaintiff's face. The Hearing Report determined this was consistent with the school nurse's account of the events—she stated that she saw the Plaintiff within 15 minutes of the experience and that she observed no dust on his hair, face, or clothing. As to the Plaintiff's claims that he saw numerous doctors about the events of that day, H.O. Reigel found that there was no medical evidence of the Plaintiff having been treated by anyone.

The Court also notes that the Hearing Report contained detailed factual findings relating to events not alleged in the Amended Complaint, certain failings by the Plaintiff, including:   failing to properly store window springs during the Spring of 2014, and then failing to notify a supervisor that the springs were damaged and unusable as a result of the improper storage; failing to properly secure emptied student lockers with plastic ties in the Spring of 2014; failing to seal a newly installed conduit and drain in the crawl space under the High School

kitchen; failing to remove and replace two defective door checks; excessive absenteeism; falsely informing staff members on March 31 and April 1, 2014 that there was a health hazard at the High School evidenced by a strong odor and swarm of black flies near a crawl space; walking away from a subordinate on May 7, 2014 and stating "I can't have any conversation with you or have any contact with you"; and refusing to speak to two District "Maintainers" on June 4, 2014 without the school Principal being present.

Ultimately, the Hearing Report concluded that, based on H.O. Riegel's factual findings, the appropriate recommended discipline was termination of employment.

## E.   Removal and the Instant Motion

On January 7, 2015, just two days after the issuance of the Hearing Report, the Defendants' removed this action to federal court on the basis of federal question jurisdiction.

On February 18, 2015, the Defendants filed the instant motion seeking partial dismissal of the Amended Complaint.  In particular, the Defendants contend that:  (i) the Plaintiff's Second Cause of Action should be dismissed because the Amended Complaint fails to state a *prima facie* claim for national origin discrimination in violation of the NYSHRL; (ii) the Plaintiff's Fourth Cause of Action for aiding and abetting discriminatory and retaliatory conduct in violation of the NYSHRL should be dismissed as against Hunderfund, individually, because the Amended Complaint fails to allege facts sufficient to state a cognizable claim against him; (iii) the Plaintiff's Sixth Cause of Action based on NYLL § 220 should

be dismissed because that statute requires a plaintiff to present alleged wage-and-hour violations to the New York State Department of Labor prior to bringing an action against an employer, which the Plaintiff here did not do; (iv) the Plaintiff's Sixth Cause of Action should be dismissed on the alternative ground that it is time-barred; and (v) the Plaintiff's First, Second, Third, and Fourth Causes of Action should be dismissed to the extent they assert violations of the NYSHRL because the factual findings contained in the Hearing Report operate to collaterally estop the Plaintiff from stating claims under the statute.

The Plaintiff opposes the motion and requests permission to further amend his pleading to add claims under the Fair Labor Standards Act ("FLSA") and analogous sections of the NYLL.

## III.   Discussion

### A.   The Legal Standards

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted."

"In order '[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Environmental Servs. v. Recycle Green Servs., 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 929 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice")).

In assessing plausibility, the Court is required to determine whether the allegations in the complaint permit "an inference which is more than possible, but less than probable" and "thereby warrants proceeding with discovery." Environmental Servs., 7 F. Supp. 2d at 271 (citing Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"In considering a motion to dismiss pursuant to [Rule 12(b)(6)], the Court generally 'accept[s] all allegations in the complaint as true and draw[s] all inferences in the nonmoving party's favor.'" Winfield v. Babylon Beauty Sch. of Smithtown Inc., 13-cv-6289 (ADS)(SIL), 2015 U.S. Dist. LEXIS 28351, at *8 (E.D.N.Y. Mar. 7, 2015) (quoting LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d. Cir. 2009)).

## B.   As to Whether the Plaintiff Has Stated a Claim for National Origin Discrimination Under the NYSHRL

The Defendants first contend that the Amended Complaint fails to state a claim for national origin-based discrimination under the NYSHRL.  That statute, in relevant part, makes it an "unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . race, creed, color [or] national origin . . . to refuse to hire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. L. § 296(1)(a).

The Plaintiff's Second Cause of Action contains two separate theories of relief under this provision:  (i) unlawful discrimination based upon the Plaintiff's national origin; and (ii) **a** hostile work environment.  *See* Am. Compl. ¶¶ 71-72 (predicating

"national origin discrimination" cause of action upon *inter alia* "an inference of discrimination," "adverse employment actions," and "subjecting him to a hostile work environment"). These claims are generally governed by the same standards as the federal law under Title VII.  See Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006) (finding state law hostile work environment claim governed by same standards as the analogous federal law claim); Setelius v. Nat'l Grid Elec. Servs. LLC, 11-cv-5528 (MKB), 2014 U.S. Dist. LEXIS 134789, at *91 n.25 (E.D.N.Y. Sept. 24, 2014) (noting that "the Second Circuit and the New York Court of Appeals 'typically treat[ ] Title VII and NY[S]HRL discrimination claims as analytically identical, applying the same standard of proof to both claims' " (quoting Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 (2d Cir. 2008)).

"[A] plaintiff establishes a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he was competent to perform the job in question, or was performing the job duties satisfactorily; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination."   Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (citing Dawson v. Bumble & Bumble, 398 F.3d 211, 216-17 (2d Cir. 2005)).

With respect to the third element, "[u]nder New York law . . ., a plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment," which is understood to be "a change in working conditions that is more disruptive than a mere inconvenience or an alteration of job responsibilities."   Bermudez v. City of New York, 783

F. Supp. 2d 560, 576-77 (S.D.N.Y. Mar. 25, 2011) (internal citations and quotation marks omitted).

Essential to a claim for discrimination — the "*sine qua non*" of such a claim — is that the discrimination must be *because of* [the plaintiff's protected characteristic]." Soloviev v. Goldstein, 14-cv-5035 (WFK), 2015 U.S. Dist. LEXIS 62702, at *23 (E.D.N.Y. May 13, 2015) (emphasis in original) (quoting Bivens v. Inst. For Cmty. Living, Inc., 14-cv-7173 (PAE), 2015 U.S. Dist. LEXIS 51000, at *17 (S.D.N.Y. Apr .17, 2015)); Sundaram v. Brookhaven Nat'l Labs, 424 F. Supp. 2d 545, 580 (E.D.N.Y. 2006) (Report and Recommendation), adopted, 424 F. Supp. 2d 545 (E.D.N.Y. 2006) (noting requirement that a plaintiff "demonstrate that the harassment occurred because of his membership in a protected class").

Relatedly, "[t]o make out a *prima facie* case for hostile work environment, a plaintiff must show that he is a member of a protected class and that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.' " Palumbo v. Carefusion 2200, Inc., 12-cv-6282 (EAW), 2014 U.S. Dist. LEXIS 110765, at *38 (W.D.N.Y. Aug. 11, 2014) (quoting Preuss v. Kolmar Labs., Inc., 970 F. Supp. 2d 171, 184 (S.D.N.Y. 2013)).  In this regard, a " 'mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment' to establish a hostile work environment claim." Preuss, 970 F. Supp. 2d at 184-85 (quoting Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)); see Terry v. Ashcroft, 336 F.3d 128, 148 (2d

Cir. 2003) (noting that a "mild, isolated incident does not make a work environment hostile" (citation and quotation marks omitted)).

Rather, "[a] work environment is 'hostile' if 'a reasonable person would have found [the work environment] to be [hostile] and if the plaintiff subjectively so perceived it.' " <u>Preuss</u>, 970 F. Supp. 2d at 184 (quoting <u>Brennan v. Metro. Opera Ass'n</u>, 192 F.3d 310, 318 (2d. Cir. 1999)). "Even when a plaintiff establishes that she was exposed to an objectively and subjectively hostile work environment, 'she will not have a claim . . . unless she can also demonstrate that the hostile work environment was caused by animus towards her as a result of her membership in a protected class.' " <u>Bermudez</u>, 783 F. Supp. 2d at 578 (quoting <u>Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper</u>, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003)).

As set forth below, the Plaintiff has not alleged facts sufficient to plausibly show that he is entitled to relief under either of these theories.

### 1.   Unlawful Discrimination Based on National Origin

With respect **to** his claim for intentional national origin-based discrimination, the Plaintiff adequately alleges that as an Italian-American, he is a member of a protected class. <u>See</u> Am. Compl. ¶ 32; <u>cf.</u> <u>Commodari v. Long Island Univ.</u>, 99-cv-2581 (DGT), 2002 U.S. Dist. LEXIS 26225, at *32 (E.D.N.Y. Mar. 25, 2002), <u>aff'd</u>, 62 F. App'x 28 (2d Cir. 2003)) ("As an individual of Italian ancestry, [the plaintiff] clearly is a member of a protected group").

As to the second element, the Plaintiff alleges that he was competent to perform the job of Head Custodian at the High School. <u>See, e.g.</u>, Am. Compl. ¶ 1

(alleging that the Plaintiff "has shown a wide [ ] range of knowledge of all facets of maintenance, making him an integral member of the School's personnel").

With regard to the third element, the Plaintiff alleges facts that, when construed in his favor, constitute adverse employment actions, such as his removal from the paid position of District Checker and the reduction in his paid overtime hours.

However, as to the fourth element, even drawing all inferences in the Plaintiff's favor, the Amended Complaint fails to sufficiently allege the requisite causation.   That is, even if Plaintiff belongs to a protected class and suffered adverse employment actions, there is no basis for reasonably inferring that the adverse employment actions occurred *because of* his membership in a protected class.   On the contrary, in his complaint the Plaintiff either attributes the alleged adverse employment actions to causes other than his national origin or fails to plead causation in any manner.

For example, with respect to the Plaintiff's claim that his paid overtime hours were reduced, he alleges that the Defendants afforded other non-disabled employees the requested overtime as needed to complete their jobs.   The clear implication of this assertion is that the Plaintiff was treated worse than other employees because he was disabled, not because he was Italian-American.

Similarly, the Plaintiff alleges that Colaitis justified removing him from the paid position of District Checker because, due to his alleged shoulder injuries, the Plaintiff could no longer perform the required duties.   In this regard the Plaintiff

alleges, consistent with disability discrimination and not national origin-based discrimination, that the Defendants failed to offer him a reasonable accommodation, failed to engage in an interactive process, and then gave the position to Hodge, who is not disabled.

Finally, the Plaintiff alleges in conclusory fashion that his comp time was "arbitrarily" reduced by fifty-six hours. That the Plaintiff categorizes this action as "arbitrary" does not support his claim that it was the result of intentional discrimination on the basis of national origin.

In reaching its conclusion, the Court notes that the Amended Complaint contains only one allegation relating to the Plaintiff's national origin, namely, during a telephone conversation, Colaitis told the Plaintiff that "he reminded him of the 'Italian cruise ship Captain,' referring to the Costa Concordia cruise ship that capsized."

Despite alleging that this remark offended him, the Plaintiff fails to allege any related details, such as when it was made with regard to an alleged adverse employment action; the context in which it was made; or whether District decision-makers such as Hunderfund were aware of it. See, e.g., LaSalle v. City of New York, 13-cv-5109 (PAC), 2015 U.S. Dist. LEXIS 41163, at *13-*14 (S.D.N.Y Mar. 30, 2015) (finding that verbal comments only raise an inference of discrimination if "there is a nexus between the comments and an adverse employment decision" and identifying relevant analytical factors, including context, timing, and whether the speaker was a decision-maker); see also Paul v. Postgraduate Ctr. for Mental

24

<u>Health</u>, 12-cv-362 (VMS), 2015 U.S. Dist. LEXIS 42944, at *64-*65 (E.D.N.Y. Mar. 31, 2015) (finding no inference of discrimination where subject remarks were made by employees without decision-making authority).   Thus, in the absence of any allegations plausibly connecting Colaitis's stray remark to the alleged adverse employment actions, the Amended Complaint fails to state a claim for unlawful discrimination on the basis of national origin and that portion of the Second Cause of Action is dismissed.

## 2.     National Origin-Based Hostile Work Environment

For similar reasons, the Plaintiff has failed to sufficiently state a national origin-based claim for a hostile work environment.

As noted, the Plaintiff has only alleged a single incident of hostility claimed to have been motivated by bias against Italian-Americans.   While a single incident may be actionable if it is sufficiently severe, <u>see</u> <u>Bermudez</u>, 783 F. Supp. 2d at 593-94 (finding a single "gross incident of sexual harassment" sufficient to create a hostile work environment), the Court finds that Colaitis's reference to the Captain of the Costa Condordia is "not of sufficient magnitude to meet the applicable standard for severe intimidation, ridicule and insult" required to plead a legally sufficient hostile work environment claim.   <u>Placide-Eugene v. Visiting Nurse Serv. of N.Y.</u>, 12-cv-2785 (ADS)(ARL), 2013 U.S. Dist. LEXIS 76240, at *34-*36 (E.D.N.Y. May 30, 2014) (Spatt, J.); <u>see</u> <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110-11 (2d Cir. 1997) (holding that "for racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than few isolated incidents of racial enmity,

meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments"); cf. Summa v. Hofstra Univ., 708 F.3d 115, 121, 126 (2d Cir. 2013) (describing a single incidence of harassment sufficiently severe to survive summary judgment); Hammond v. Zurich Am. Ins. Co., 09-cv-3219 (JS)(ARL), 2010 U.S. Dist. LEXIS 83183, at *16-*18 (E.D.N.Y. Aug. 12, 2010) (dismissing claims unsupported by "even a single fact that could give rise to a hostile work environment because of [the plaintiff's] . . . race" and noting that even "[a] nasty unpleasant workplace is not a hostile work environment for purposes of NYSHRL").

Accordingly, the Plaintiff's Second Cause of Action is dismissed.

## C.   As to Whether the Plaintiff Has Stated a Claim for Individual Liability against Defendant Hunderfund for Aiding and Abetting Under the NYSHRL

The Defendants also seek to dismiss the Plaintiff's claim against Hunderfund, individually, for aiding and abetting under the NYSHRL.

### 1.   The Applicable Law

As noted above, under the NYSHRL an employer may not, "because of an individual's . . . race, creed, color [or] national origin," "refuse to hire or employ or to bar or discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. L. § 296(1)(a).    In addition, the statute makes it "an unlawful discriminatory practice for any person . . . to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article . . ."

Id. § 296(7).  Under certain circumstances, individual liability may be imposed for a violation of either provision.  See id. § 296(6) (making it unlawful to "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so").

Relevant to the instant case, " ' a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYS]HRL.' "  Naftchi v. New York Univ., 14 F. Supp. 2d 473, 491 n.148 (S.D.N.Y. 1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds, Burlington Ind. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998))).  " 'A finding of participation in the alleged discriminatory conduct requires a showing of direct, purposeful participation.' " Harris v. NYU Langone Med. Ctr., 12-cv-454 (RA)(JLC), 2013 U.S. Dist. LEXIS 99328, at *102-*103 (S.D.N.Y. July 9, 2013) (Report and Recommendation), adopted, 2013 U.S. Dist. LEXIS 139622 (S.D.N.Y. Sept. 27, 2013) (quoting Regan v. Benchmark Co. LLC, 11-cv-4511, 2012 U.S. Dist. LEXIS 28722 (S.D.N.Y. Mar. 1, 2012)).

However, "[t]o 'actually participate' in the discrimination, a covered defendant need not itself take part in the primary violation."  Heskin v. InSite Adver., Inc., 03-cv-2508 (GBD)(AJP), 2005 U.S. Dist. LEXIS 2546, at *84 (S.D.N.Y. Feb. 22, 2005) (quoting Lewis v. Triborough Bridge & Tunnel Auth., 77 F. Supp. 2d 376, 381 (S.D.N.Y. 1999)).  Rather, "[l]iability 'may extend to supervisors who failed to investigate or take appropriate remedial measures despite being informed about

the existence of alleged discriminatory conduct.' " <u>Kellman v. Metro. Transp. Auth.</u>, 8 F. Supp. 3d 351 (S.D.N.Y. 2014) (quoting <u>Morgan v. N.Y. State Att'y Gen.'s Office</u>, 11-cv-9389 (PKC)(JLC), 2013 U.S. Dist. LEXIS 17458, at *38 (S.D.N.Y. Feb. 8, 2013)).   Indeed, such a failure "can rise to the level of actual participation" under the NYSHRL.   <u>Lewis</u>, 77 F. Supp. 2d at 381, 384 (internal quotation marks omitted); <u>see</u> <u>Hicks v. IBM</u>, 44 F. Supp. 2d 593, 600 (S.D.N.Y. Apr. 16, 1999) (finding it possible for the plaintiff to prove that her supervisors' failure to adequately correct discrimination amounted to their encouragement, condonation, and approval of such behavior).

However, where " 'the plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme" the defendant may not be held liable under the NYSHRL. <u>Id.</u> at 85 (quoting <u>Lewis</u>, 77 F. Supp. 2d at 381).

Applying these principles, as set forth in greater detail below, the Court grants in part and denies in part the Defendants' motion to dismiss the Fourth Cause of Action as against Hunderfund.

### 2.    The Analysis

Initially, the Court notes that liability for an aider and abettor can only be established when liability has also been established as to the employer.   <u>See</u> <u>Setelius</u>, 2014 U.S. Dist. LEXIS 134789, at *113 (citing <u>Redd v. N.Y.S. Div. of Parole</u>, 923 F. Supp. 2d 371, 392 (E.D.N.Y. 2012); <u>Davis-Bell v. Columbia Univ.</u>, 851 F. Supp. 2d 650, 688 (S.D.N.Y. 2012); <u>Raneri v. McCarey</u>, 712 F. Supp. 2d 271, 282

(S.D.N.Y. 2010)).  Therefore, to consider the Defendants' argument on this issue, the Court must discern what actionable conduct of the District (*i.e.*, the employer) Hunderfund is alleged to have aided and abetted.

In that regard, the Amended Complaint is vague:  a single conclusory sentence states only that Hunderfund, among others, "directly participated in, aided, abetted, incited, compelled, and coerced *the aforementioned discriminatory and retaliatory treatment*, in violation of the [NYSHRL]."  Am. Compl. ¶ 76 (emphasis supplied).  Upon review of the complaint, it appears that "the aforementioned discriminatory and retaliatory treatment" refers to three broad categories of alleged misconduct:  (i) disability discrimination (unlawful discrimination and hostile work environment) under the ADA, the Rehabilitation Act, and the NYSHRL; (ii) national origin-based discrimination (unlawful discrimination and hostile work environment) under the NYSHRL; and (iii) retaliation for opposing discriminatory practices under the ADA, the Rehabilitation Act, and the NYSHRL.  Thus, it is with these categories in mind that the Court looks to the specific factual allegations against Hunderfund to determine whether they are sufficient to plausibly show that he unlawfully aided and abetted them.

### a.   As to Whether Hunderfund Aided and Abetted Disability Discrimination

Relevant here, the Plaintiff alleges that Hunderfund is the District Superintendent; that he was the Plaintiff's supervisor; and that he served the Plaintiff with the allegedly retaliatory Statement of Charges on behalf of the

District.  The Plaintiff also alleges facts which, while not specifically implicating Hunderfund, reasonably imply his knowledge and/or participation.

For example, the Plaintiff alleges that he served the District and the Board with a Notice of Claim complaining of discrimination and retaliation.  Thus, it is reasonable to infer that Hunderfund, as the District's Superintendent, knew or should have known about the complaints or, at a minimum, about the District having been served with the statutory prerequisite to a lawsuit.  The Plaintiff further alleges that after serving his Notice of Claim, the Defendants' discriminatory conduct continued unabated until days later when Hunderfund personally served the Plaintiff with the District's Statement of Charges.  While not a model of clarity, the Court finds these allegations sufficient to pass Rule 12(b)(6) muster.

While the Plaintiff does not explicitly allege that he notified Hunderfund directly of the alleged discrimination, the Amended Complaint sufficiently sets out a plausible factual scenario under which Hunderfund nevertheless knew of the discrimination and either deliberately failed to act in response to it, or affirmatively participated in the District's decision to pursue disciplinary charges against him.  Put another way, the Plaintiff "might possibly be able to prove that [Hunderfund] aided and abetted some unlawful conduct." Rosetti v. Hudson Valley Cmty. College, 94-cv-519, 1997 U.S. Dist. LEXIS 13949, at *19 (N.D.N.Y. Sept. 5, 1997); see Gallo v. Wonderly Co., 12-cv-1868 (LEK)(RFT), 2014 U.S. Dist. LEXIS 1004, at *28 (N.D.N.Y. Jan. 6, 2014) ("Even if Gallo failed to evoke the magic word,

'discrimination,' or only limited evidence of her complaint about a hostile working environment was presented [*sic*] to human resources, such would not change the analysis of aiding and abetting" (citations omitted)); <u>Payne v. Mount Hope Hous. Co.</u>, 04-cv-2897 (JG), 2007 U.S. Dist. LEXIS 20983, at *8 (E.D.N.Y. Mar. 25, 2007) ("That Payne began to receive the memoranda only (and immediately) after she complained of sexual harassment supports the inference that Belle and Hendrickson intended to lay a pretextual foundation for Payne's retaliatory discharge.  In addition, Payne has alleged that Belle filed a defamation action against Payne nine days after he terminated her.  I agree with Payne that the timing of this action supports the inference that it was levied to pressure Payne to drop her discrimination case" (citation omitted)); <u>Hicks</u>, 44 F. Supp. 2d at 600 (finding it "too early" to dismiss claims against individual supervisory personnel where the plaintiff alleged that they failed to take adequate actions to correct discrimination).

The Defendants contend in their brief that Hunderfund "knew nothing about" the alleged discrimination.  <u>See</u> Reply Memorandum of Law in Support of Defendants' Motion to Dismiss at 4.  While that may be true, it is not a fact alleged in the Amended Complaint and is indeed disputed by the Plaintiff.  Therefore, it is not proper for the Court to consider for purposes of the present motion.  <u>See</u> <u>Winfield</u>, 2015 U.S. Dist. LEXIS 28351, at *24-*25 (citing <u>Leonard F. v. Israeli Disc. Bank of New York</u>, 199 F.3d 99, 107 (2d Cir. 1999)).

Accordingly, the Court denies the Defendants' motion to the extent it seeks to dismiss the Fourth Cause of Action against Hunderfund for aiding and abetting disability discrimination.

### b. As to Whether Hunderfund Aided and Abetted Retaliation

Similarly, the Court denies the Defendants' motion to the extent it seeks to dismiss the Fourth Cause of Action against Hunderfund for aiding and abetting retaliation. As explained more fully above, the Amended Complaint sufficiently alleges that the Plaintiff engaged in a protected activity by serving the District with a Notice of Claim regarding the alleged discrimination. See Brinn v. Syosset Pub. Library, 09-cv-1151 (SJF), 2014 U.S. Dist. LEXIS 154226, at *15-*16 (E.D.N.Y. Oct. 29, 2014) (noting that "the filing of a notice of claim is a well-established form of protected activity"). The Amended Complaint further alleges facts sufficient to support a reasonable inference that Hunderfund knew of the protected activity and subsequently served the Plaintiff with disciplinary charges, which the Plaintiff contends were solely motivated by retaliation for his own pursuit of legal recourse. These allegations are sufficient to state a *prima facie* claim for retaliation under the NYSHRL. See Ideyi v. State Univ. of N.Y. Downstate Med. Ctr., 09-cv-1490 (ENV)(RML), 2010 U.S. Dist. LEXIS 106370, at *18-*19 (E.D.N.Y. Sept. 30, 2010) (reciting elements of a *prima facie* retaliation claim under the NYSHRL).

### c.   As to Whether Hunderfund Aided and Abetted National Origin-Based Discrimination

**I**n light of the Court's holding that the Plaintiff failed to state a claim for national origin-based discrimination against the District and the Board, it necessarily follows that the Plaintiff cannot maintain a related claim against Hunderfund, or anyone for that matter, for aiding and abetting such discriminatory conduct.   Accordingly, the Court grants the Defendants' motion to the extent it seeks to dismiss the Fourth Cause of Action against Hunderfund for aiding and abetting national origin-based discrimination.

Similarly, the Court *sua sponte* dismisses the Fourth Cause of Action against Colaitis and Bosworth on that basis as well.  See Placide-Eugene, 2013 U.S. Dist. LEXIS 76240, at *37 (noting that "the Court has the power to dismiss claims *sua sponte* for failure to state a claim" (citing Leonhard v. U.S., 633 F.2d 599, 609 n.11 (2d Cir. 1980); Byars v. Malloy, 3:11-cv-17 (SRU), 2011 U.S. Dist. LEXIS 111483, at *5 (D. Conn. Sept. 29, 2011)).

Accordingly, the Defendants' motion is granted in part and the Fourth Cause of Action is dismissed insofar as it seeks to impose individual liability against Hunderfund, Bosworth, and Colaitis for aiding and abetting national origin-based discrimination under the NYSHRL.  However, the motion is denied to the extent it seeks to dismiss the claims against Hunderfund for aiding and abetting disability discrimination and retaliation under the NYSHRL.

**D.     As to Whether the Plaintiff's New York Labor Law Claim is Procedurally Defective**

In this regard, the Defendants contend that the Plaintiff's Sixth Cause of Action pursuant to NYLL § 220 should be dismissed for failure to exhaust a statutory condition precedent.

Initially, it warrants noting that the purpose behind NYLL § 220 is to establish prevailing wages for employees engaged in public works projects.  Here, the Plaintiff does not allege that he was denied the prevailing wage or that he was engaged in a public works project during the relevant time period.  However, the Defendants do not base their attempt to dismiss the Plaintiff's Sixth Cause of Action on this ground, and so the Court will not consider it.

The Defendants do, however, challenge the Plaintiff's compliance with the specific process found in § 220 for vindicating an employee's rights:

> First, the employee must file a complaint with the fiscal officer, who then conducts an investigation; within six months of the date of filing, the fiscal officer must issue an order directing any payment due on the employee's claim. . . . Primary enforcement of § 220 is the responsibility of the fiscal officer; therefore, there can be no judicial review until the fiscal officer acts. . . . Upon entry of the fiscal officer's order, the aggrieved party – whether employee or employer – may, within 30 days, institute a proceeding under Article 78 of the New York Civil Practice Law and Rules . . . Once an order in favor of an employee becomes final . . . , it may be enforced like any other money judgment . . . ; if, by contrast, the process does not result in an order in favor of the employee, then the prevailing wage claim is at an end.

Brown v. Tomcat Elec. Sec., Inc., 03-cv-5175 (FB)(JO), 2007 U.S. Dist. LEXIS 63542, at *8-*9 (E.D.N.Y. Aug. 27, 2007) (internal citations omitted); see Goodman v. Port Auth. of N.Y. & N.J., 850 F. Supp. 2d 363, 375-76 (S.D.N.Y. 2012) (noting

that in order "[t]o pursue an overtime claim in court under [the NYLL] . . . a plaintiff must allege that an administrative hearing has been convened finding in his favor that is unreviewed, and that he has commenced the action within six months of that finding); see also Marren v. Ludlam, 14 A.D.3d 667, 790 N.Y.S.2d 146 (App. Div. 2005) (recognizing that "no private right of action for underpayment of wages exists under Labor Law § 220 until an administrative determination in the employee's favor has been made and has gone unreviewed or has been affirmed).

The Defendants contend that the Plaintiff has no private right of action under the statute because " 'there has [not] been an administrative determination pursuant to subdivision (8) that either has gone unreviewed or been affirmed in the [Plaintiff]'s favor.' " Goodman, 850 F. Supp. 2d at 375 (quoting Pesantez v. Boyl Envtl. Servs., Inc., 251 A.D.2d 11, 12, 673 N.Y.S.2d 659 (N.Y. App. Div. 1998)).

The Plaintiff agrees, conceding that the Defendants' interpretation of NYLL § 220 is "correct." See Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 12.

Accordingly, there is no dispute that the Plaintiff's Sixth Cause of Action under NYLL § 220 is deficient for failure to exhaust administrative remedies and the Defendants' motion to dismiss that claim is granted.

**E.    As to Whether the Plaintiff's New York Labor Law Claim is Time-Barred**

Having found the Plaintiff's NYLL claim procedurally defective warranting dismissal, the Court need not reach the issue of whether that claim is also time-barred.

**F.     As to Whether the Hearing Report Precludes the Plaintiff's Claims Under the NYSHRL**

The Defendants next seek to dismiss the Plaintiff's First, Second, Third, and Fourth Causes of Action to the extent they assert violations of the NYSHRL, on the grounds that those claims are precluded by the Hearing Report.  To clarify this contention, in light of the Court's prior rulings, the specific claims left implicated by this argument are: (i) disability discrimination (unlawful discrimination and hostile work environment) by the District and the Board; (ii) retaliation for opposing discriminatory practices by the District and the Board; and (iii) aiding and abetting disability discrimination and retaliation by Hunderfund, Colaitis, and Bosworth.

Before turning to the merits of the Defendants' argument in this regard, a threshold issue is presented as to whether the Hearing Report, upon which the Defendants singularly rely, may be considered on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

**1.     Threshold Issue—As to Whether the Hearing Report May be Considered in Resolving the Instant Motion**

It is well-settled that "[t]he materials a court may consider when deciding a motion to dismiss under Rule 12(b)(6) are limited." Armand v. Osbourne, 11-cv-4182 (NGG)(CLP), 2014 U.S. Dist. LEXIS 23911, at *9 (E.D.N.Y. Feb. 24, 2014).  In fact, "a court considering a Rule 12(b)(6) motion to dismiss for failure to state a claim generally may not consult evidence outside the pleadings." Vailette v. Lindsay, 11-cv-3610 (NGG)(RLM), 2014 U.S. Dist. LEXIS 114701, at *8 (E.D.N.Y. Aug. 18, 2014).  Rather, in adjudicating such a motion, the Court may only consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Environmental Servs., 7 F. Supp. 2d at 270 (quoting In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)).

Under Fed. R. Civ. P. 12(d), if any other "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see Vailette, 2014 U.S. Dist. LEXIS 114701, at *18 ("In other words, if parties submit extrinsic evidence, the court has two options:  (1) it may exclude such evidence and decide the motion on the complaint alone or (2) convert the motion to one for summary judgment and consider the extrinsic evidence").

" 'Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment.' " Environmental Servs., 7 F. Supp. 2d at 270 (quoting Carione v. United States, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005)).

Here, the Defendants contend that the Hearing Report may properly be considered under Fed. R. Civ. P. 12(b)(6) because it "is integral to" the Plaintiff's Amended Complaint and the Plaintiff "had notice of it." Def. Memo of Law at 12.

However, as the Plaintiff points out, this position is belied by the relevant timeline, discussed above. In particular, the Plaintiff served his Notice of Claim on May 2, 2014; filed his initial Complaint on November 14, 2014; and filed his Amended Complaint on December 10, 2014, all before the Hearing Report was issued on January 5, 2015. Therefore, it defies reason to suggest that the Hearing Report was integral to either of the Plaintiff's pleadings because it was not yet in existence when they were prepared.

In that regard, it is self-evident that the Plaintiff could not have relied upon the as-yet unreleased Hearing Report when the pleading was drafted, or, as the Defendants assert, that the Plaintiff somehow had knowledge of it prior to January 5, 2015. See Global Network Communs., Inc., 458 F.3d 150 (2d Cir. 2006) (noting that "a necessary prerequisite for" finding materials integral to the pleading "is that the 'plaintiff[ ] *rel[y]* on the terms and effect of [the] document in drafting the complaint . . .; mere notice or possession is not enough'" (emphasis in original) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002))); Conn. Indem. Co. v. 21st Century Transp. Co., 99-cv-7735 (ILG), 2001 U.S. Dist. LEXIS 10795, at *10-*12 (E.D.N.Y. July 27, 2001) (finding documents integral to complaint where the plaintiff "clearly knew about" them "before filing the Amended

Complaint").    Consequently, in its discretion, the Court declines to consider the
Hearing Report in connection with the instant motion.

**2.    As to Whether Preclusion Applies to Bar the Plaintiff's NYSHRL Claims**

Having excluded the Hearing Report from the instant motion, there is no
basis for the Defendants' argument that the Plaintiff's claims under the NYSHRL
are precluded by the report.

Accordingly, the Defendants' motion, to the extent it seeks to dismiss alleged
violations of the NYSHRL in the Plaintiff's First, Second, Third, and Fourth Causes
of Action based on the Hearing Report, is denied.

**G.    As to The Plaintiff's Cross-Motion to Amend**

Conceding that his claim under NYLL § 220 is procedurally defective
warranting dismissal, the Plaintiff nevertheless requests that such dismissal be
without prejudice and that he be permitted to "replead his claim for unpaid
overtime" under NYLL § 663 and the Fair Labor Standards Act ("FLSA").  Pl. Memo
of Law at 12.

Under Fed. R. Civ. P. 15, a party may amend its pleading with the Court's
leave.  See Fed. R. Civ. P. 15(a)(2).  The Rule requires the Court to "freely give leave
when justice so requires."  Id.  "Amendment should only be denied for good reasons
such as 'undue delay, bad faith or dilatory motive on the part of the movant,
repeated failure to cure deficiencies by amendments previously allowed, undue
prejudice to the opposing party by virtue of allowance of the amendment, futility of
amendment, etc.' "  Res. Mine, Inc. v. Gravity Microsystem LLC, 09-cv-573

(DRH)(WDW), 2014 U.S. Dist. LEXIS 172278, at *10-*11 (E.D.N.Y. June 27, 2014) (Report and Recommendation), adopted, 2014 U.S. Dist. LEXIS 53980 (E.D.N.Y. Dec. 11, 2014) (quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008)).  "[A]mendments are generally favored because 'they tend to facilitate a proper decision on the merits.'"  Id. at *10 (quoting Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998)).

However, courts have held that a "bare request to amend a pleading" contained in a brief, which does not also attach the proposed amended pleading, is improper under FRCP 15.  See, e.g., Curry v. Campbell, 06-cv-2841 (DRH)(ETB), 2012 U.S. Dist. LEXIS 40341, at *22 (E.D.N.Y. Mar. 23, 2012) ("To satisfy the requirement of particular[it]y in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the Court and opposing parties can understand the exact changes sought") (quoting AT&T Corp. v. Am. Cash Card Corp., 184 F.R.D. 515, 521 (S.D.N.Y. 1999)); see also Evans v. Pearson Enters., Inc., 434 F.3d 839, 853 (6th Cir. 2006) ("We agree with several of our sister circuits that a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . .—does not constitute a motion within the contemplation of Rule 15(a)") (quoting Confederate Mem'l Ass'n, Inc. v. Hines, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Under these circumstances, courts, in their discretion, may hold the motion to dismiss in abeyance pending the filing of the proposed pleading or deny the motion to amend without prejudice.  See AT&T Corp., 184 F.R.D. at 521.

Here, the Plaintiff fails to formally cross-move for leave to amend or to provide a proposed amended pleading.  Instead, in opposition to the Defendants' motion to dismiss, the Plaintiff refers broadly to "the large body of law surrounding unpaid overtime hours under New York Labor Law and the Fair Labor Standards Act" and cites to two paragraphs in the Amended Complaint that he believes justify amending his pleading.  Specifically, he alleges that:

> 42. Despite being a violation of the overtime policy, compensation time is stored by Defendant District in the computer system.  Plaintiff has noticed that Defendants have arbitrarily reduced his compensation time in the amount of fifty-six (56) hours.

> 43. In July 2013, Plaintiff expressed his concerns over his diminished compensation time with Defendant District's attorney Florence Frazer. To date, Plaintiff's concerns have not been addressed and he has lost overtime pay.

Am. Compl. ¶¶ 42-43.

Accordingly, the Court finds the Plaintiff's request is procedurally improper under Fed. R. Civ. P. 15 and, in its discretion, denies it on that basis without prejudice and with leave to renew.  As a result, the Court need not reach the Defendants' futility arguments at this time.

## IV.   Conclusion

For the reasons set forth herein, the Court grants in part and denies in part the Defendants' motion to dismiss.

The Court grants the motion and dismisses the Plaintiff's Second Cause of Action based on national origin-based discrimination under the NYSHRL; the Fourth Cause of Action insofar as it seeks to impose individual liability against

Defendants Hunderfund, Bosworth, and Colaitis for aiding and abetting national origin-based discrimination under the NYSHRL; and the Sixth Cause of Action for a violation of NYLL § 220.

The Court denies the motion to dismiss the Fourth Cause of Action insofar as it seeks to impose individual liability against Hunderfund for aiding and abetting disability discrimination and retaliation under the NYSHRL; and the First, Second, Third, and Fourth Causes of Action insofar as they allege violations of the NYSHRL.

Finally, the Court denies without prejudice the Plaintiff's request for leave to amend as procedurally improper, and grants the Plaintiff leave to renew his request in a manner consistent with Fed. R. Civ. P. 15.

**SO ORDERED**

Dated: Central Islip, New York                  */s/ Arthur D. Spatt*
July 13, 2015                                    ARTHUR D. SPATT
                                                 United States District Judge